Good morning, Your Honors. My name is Dylan Jacobs. I'm an Assistant Solicitor General for the State of Arkansas. I represent the State Appellants in this matter. May it please the Court. The modification orders should be reversed for three independent reasons. First, the modification orders defy Supreme Court precedent, limiting inter-district remedies to inter-district constitutional violations. Second, no modification could have possibly been warranted on the basis of a change in Arkansas school choice law, because as relevant here, the orders below did not concern inter-district student transfers. And third and finally, the modification orders themselves violate equal protection principles by treating children differently on the basis of their race. Could you repeat your second point? What did you say in the second point? Your Honor, that no modification of these orders could have been warranted on the basis of a change in school choice law, because as we sit here today, for purposes of this case, the orders didn't deal with inter-district student transfers. So that's the same, basically, because of your first point? The fact that these cases were intra-district in nature, as they are relevant for this case, supports reversal on both of those points. I think it's certainly right, Your Honor. And in fact, I'd suggest these orders, the modification orders, are so indefensible that the United States, one of the plaintiffs below, isn't here defending those orders on appeal. The State of Arkansas has, for three decades, empowered parents to have a voice in their children's education by providing parents the ability to choose the public school that best fits their child's needs, no matter where they reside. However, the original 1989 law denied certain parents and children that opportunity based solely on their race. And after a federal court struck down that requirement, Arkansas adopted the 2013 Public School Choice Act and moved Arkansas to a race-neutral school choice program. And certain school districts, for reasons financial or otherwise, have attempted to avoid participating in school choice on the same footing as practically every other school district in the state. And the four school districts below, who were originally defendants in desegregation cases brought as early as 50 years ago, have used these cases in that way. In the four cases below, the district court modified various orders at issue in those cases and expanded them and imposed new obligations and effectively enjoined the operation of Arkansas's race-neutral school choice statute as it applies to those districts. And we think they should be reversed. So I'll start with what is the most straightforward reason for reversal. Prohibiting inter-district student transfers is an inter-district remedy. The Supreme Court held in Milliken and later reaffirmed in Jenkins that a desegregation remedy is impermissibly inter-district when it's imposed upon districts that were neither involved in nor affected by a constitutional violation. But is this, I mean I struggle with this inter-versus-intra-district distinction. I mean imposed on. I mean this is imposed on the districts that are subject to the original orders. Is it not? I mean, or I'm confusing the question there I think a little bit. But can you specifically address why this is an inter-district when really, I mean, the only districts that are before the court, I mean, there's only one of the two districts here, right? I mean, that's it. The other district's not joined. In a lot of these inter-district cases we have multiple districts. We're moving around school district lines. Can you try to articulate for me why this is an inter-district remedy? So there's two aspects to whether a remedy is inter-district in nature that we can think of. We can think of the effect, the inter-district effect of the order, and we can think of the certainly more drastic inter-district remedy of redrawing district lines. And here I do think we have an inter-district effect in that the way that Arkansas' school choice program operates, the transfer or districts, the resident districts don't actually have any duty under Arkansas' school choice regime to do anything. The administrative duties of accepting students is entirely on the districts where they want to transfer to. So when the district court imposes the obligation not to participate in school choice, what it's really saying is the surrounding districts can't accept students from these districts the way that they can, as did practically every other school district in the state. And even whether the effects are indirect or direct, Missouri v. Jenkins makes clear that an inter-district purpose also qualifies a remedial order as inter-district. So in fact, Your Honor was describing a remedy that operated entirely on the Kansas City School District. And one particular aspect of the remedy in that case was a voluntary magnet plan that required the Kansas City School District to accept transfers from white students from the surrounding suburban school districts. Now in that case, these suburban school districts were under no obligations at all. They weren't adjoined in any way. They weren't a party to those cases. But they, the students of those districts, you know, were allowed to come to the Kansas City School Districts for the purpose in that case was cast as desegregative attractiveness. But what the Supreme Court said in Jenkins is that is an inter-district purpose, where in that case, you only had intra-district or entirely within the Kansas City School District constitutional violations identified. But what the difference here is, and I guess what the district court is saying, is that in Jenkins, you were taking students away from the suburban districts and bringing them into the Kansas City School District. Here, you're not taking anything away, at least directly from the surrounding school districts. So it has to be an indirect effect. And there's nothing in, this is what I understand the district court to be saying, is there's really nothing in the law or Constitution that says a school district has an entitlement to receive students from another district. Well, so, and we're not saying that there's an entitlement in that sense. And that's not the test for whether a remedy is inter-district. Milliken, too, sort of speaks in this in the third prong of what federal courts are supposed to look at when imposing remedies as interfering with the operation of state and local governments to manage their affairs. Because the federalism concerns are, in part, what underlie this. So the Supreme Court has said over and over again, you know, management of schools is a local, is something that's supposed to be done by state and local officials. It has been historically. We want that to still be true. So what state, what the federal courts are supposed to be doing is entering relief to target intentional discrimination by government officials, remedying it, and then getting out of the business of being involved in overseeing the operations of school districts. And in the sense of interfering with the operation of local school districts, it certainly does so on an inter-district basis, because it, the surrounding school districts here would otherwise be able to accept these transfers, and in some senses under state law might be obligated to, or at least would have a limited number of reasons that they could reject those school choice transfers. Because every school district in the state, to the extent that they don't have an order like the ones here, are required to participate in inter-district school choice. But Jenkins made very clear that on the indirect-indirect point, that if you had a case like Milliken, where it's an undisputedly intra-district case, that the district court couldn't have done an end run around the Supreme Court's initial ruling and sought to effectuate the inter-district remedies that it was trying to do in an indirect way. It said that the limit is also on the purpose, and prohibiting inter-district student transfers can't have anything but an inter-district purpose. And all the parties, I believe, agreed, and even the district court agreed, that if the remedy in these cases, even in Camden-Fairview, as it applies to schools other than Harmony District in nature, then they're improper and this court must reverse. The second basis for reversal is that no modification could have ever been warranted, no matter the relief, on a basis of the change in Arkansas school choice law. And again, all the parties agree that at least three of the four cases here were entirely intra-district in nature for their entirety. There were no districts other than the districts at issue in these by any alleged or found constitutional violations. And as to Camden-Fairview, again, we're in the same situation with every other school district other than Harmony Grove. So the Camden-Fairview consent decree does contain one transfer restriction as to one district. The complaint and all of the orders in that case are entirely silent on relief as to any other school districts. And so unsurprisingly, the orders only address intra-district behavior, remedies concerning things such as teacher hiring, classroom assignments. There's no indication in any of these orders besides the one provision that inter-district transfers are prohibited or problematic or even a topic of concern in those cases. And the district court admitted that this was in there about inter-district transfers, and yet it concluded that based on the express language having to do with intra-district behavior, that it could modify the orders to impose this sort of inter-district remedy. And its analysis started from the presumption that a parent's choice to enroll their student in a school district that best fits their own judgment constitutes race discrimination. And that runs contrary to numerous Supreme Court cases that holds that only government action can constitute intentional discrimination in the context of the 14th Amendment. And the district court also assumed that any time a school choice transfer makes even the slightest change in the racial balance of the two school districts that may be at issue here, that that constitutes segregation. And that runs afoul of the principle in numerous cases that racial balancing in and of itself is not something, one, that federal courts should be engaged in, and that, two, that it's not something to be sought for its own sake. Racial balancing demographics are relevant in the sense if they are caused by an intentional government action, but to the extent that those are caused by demographic shifts, by parent choices, that's not relevant in the constitutional sense. And in effect, the district court simply modified these orders to impose new obligations that were not contemplated by the original orders in those cases. And finally, the modification orders themselves violate equal protection principles. The Supreme Court held in Parents Involved that race-based student transfer assignments violate equal protection where they are not tailored at remedying the effects of past jury discrimination. Relying on that principle, the Arkansas district court in the Teague case declared the prior 1989 statute unconstitutional. Arkansas moved away from that race-conscious system in 2013 as a result of that. And the modification orders here actually require the school districts to return to this regime that was declared unconstitutional. And so, unlike the rest of the state, practically every district in the state, children of any race may make use of school choice. And that's not true for the four districts at issue here. So Arkansas has repudiated that approach. It's abandoned that sort of race-conscious student transfer assignments. And this court should not allow the district court to reimpose that by judicial fiat. And so, for these reasons, we would ask that the modification orders would be reversed. If there are no further questions, I'll save my time for rebuttal. You may. Thank you, Your Honors. Ms. Moore, when you're ready. Good morning, Your Honors. My name is Whitney Moore. I represent the school district defendants, Camden-Fairview, Hope, Junction City, and Lafayette County. And I'm also speaking today on behalf of the plaintiffs in the Camden-Fairview, Hope, and Lafayette County cases. May it please the Court, the district court properly modified the underlying orders and its remedy is working. Transfers are available and have been allowed in appropriate circumstances. Parents, including some of the parents cited by the state and the amici, have applied for transfers according to the district court's modification orders. The respective school boards have heard and considered the requests and the reasons therefore. And a majority, 21 out of 27 requests made since the modification orders were entered, have been granted. The modification is narrowly tailored and the district court did not abuse its discretion in entering the modification orders. The state's position, as described in their reply brief and as advanced by Mr. Brown, is in effect that they seek a system within which the parents can make a choice for their children based on their children's needs. The district court's remedy more than accomplishes this. The appropriate standard of review is abuse of discretion. The district court properly reviewed both the consent decrees and the orders in these cases, as well as the full record. These districts' history of defiance of Brown versus Board of Education, the context within which these cases were brought, the language of the complaints, plus the motions for relief filed last year. Where specifically is the conflict? Can you articulate that for me between the School Choice Act and the consent orders? I'm having a hard time. What specifically is the conflict? The conflict is that when three of the four districts entered into their orders in the late 80s and early 90s, the 1989 Act was in effect. A consent decree operates as a kind of contract between the parties. The districts were relying on the laws in effect at the time the consent decree were entered. The 1989 Act was part of that. It prohibited inter-district transfers at the time that three of the four orders were entered. The fourth order, the Junction City Order, was entered in the 70s and specifically spoke to freedom of choice not being an effective method for achieving integration and desegregation. The conflict is there are still vestiges of the de jure systems that these four districts have operated under since prior to 1954 when Brown was entered and prior to the 70s when freedom of choice was declared unconstitutional. There are vestiges of discrimination in the school district, in your client's schools? Well, I believe they are. For instance, I know the Camden Fairview complaint mentions the siting of low income housing in the Camden district as opposed to the Fairview district or the Harmony Grove district. The other current constitutional violation, though, is the presence of white flight. I don't believe... Okay, so where does it... What's the case that says white flight is a constitutional violation? Well, I think that's, and maybe it's the opposite of it, but Jenkins found that an inter-district remedy wasn't appropriate in that case because of the absence of white flight, or at least acknowledged that that wasn't present there and that that might have changed the decision in that case. It seems to me that you're accurate that that's something that underlies the district's position here and possibly the district court's opinion, although certainly the district's position. And I'm just looking for the case that supports that as a constitutional violation, and that's what I can't find. Well, I don't believe that we have argued that an inter-district constitutional violation is present. And I think that's the point that I was going to take against Mr. Jacobs' position that this is an inter-district remedy. I don't believe it is. The state of Arkansas passed the 2017 Act and imposed inter-district transfers on every school district in the state of Arkansas. Our four districts had been operating with no segregated inter-district movement for a lifetime, since at least the beginning of the 80s, the 70s, and definitely after the 89 Act came to being. And so for 24 years, from 1989 to 2013, there's no movement that's segregated. And these districts are complying with their obligations in their inter-district cases for the three, Hope, Lafayette County, and Junction City. Calvin Faber's case is inter-district, but they were able to comply with the inter-district with their orders because of the presence of the 1989 Act. If these are segregated transfers under the School Choice Act, aren't they de minimis because aren't they limited to a certain percentage? And aren't there, I don't remember, are there other exceptions that the receiving school can reject people or things like that? The receiving district can reject due to capacity or, well, I think that's about it. And then they can take up to three percent. One of the issues we dealt with at the district court level is one interpretation of the three percent rule counted siblings as one. So it wasn't really three percent. There were cases in other districts. I think Malvern was one. It's obviously not applied to this case, but they participated in the school choice. They had an enrollment of about 2,400 students. And I think three percent would have been around 75 kids. They lost over 100, maybe 110. And so there's fluidity there with movement. And the other thing is I don't think there is such a thing as a de minimis constitutional violation. I think when you look at these applications and you see that there were, I believe, 129 applications last year. So you're suggesting a single white student moving from a majority black school to a majority white school would be a segregative transfer? Or am I being unfair to your argument? Well, I'm not suggesting that because, as I mentioned, I think, a moment ago, since the district court's orders were entered, our districts have considered transfers. And they've granted 21 out of the 27 that have come before their school boards. And almost all of them were segregated. I think our point is you can't allow the state to let private choices of parents where perhaps the motives are not benign. Well, I get the argument. But it's odd when you suggest that historically the school districts have also been involved in discriminatory activity. And I just find it odd that in this case the argument is that the school board has to be empowered to prevent the parents' discriminatory activity. I understand the history here and that school choice has a checkered history at best in But it seems to be an odd argument here that the school boards, which also have a checkered history, are better positioned. And maybe that's an issue that the state legislature can pick between, right? I mean, I'm not sure this is the constitutional reason for having the school boards do this. I think that perhaps the school boards have just arrived at the correct conclusion, perhaps faster than some of the parents. And I want to be clear that I'm not assuming every parent who requests a transfer has ulterior racial motives. And I think that's true, or that's shown by the fact that transfers have been requested for legitimate reasons and have been granted by the school boards. But I think that the schools are the ones who have been the defendants in these cases and they have been responsible for answering to the district court. And so I think that they have been trying to comply with their decrees. To the decree, right? Yes, Your Honor. Let me ask, Junction City has a prohibition on transfers previously, right? Their orders, their desegregation plan initially contemplated using freedom of choice to desegregate Junction City. And then a court later ordered them to discontinue that practice because it was not an effective means of desegregating. Does it have a prohibition against transfers out from majority black districts to majority white districts? Well, no, because the 1989 Act would have allowed that. The 1989 Act allowed integrative movement. The only prohibition was on segregative movement. The position of the State of Arkansas since the 2013 Act was enacted and has been amended in 2015 and 2017 has been that you either participate in school choice or you do not. And so you can't allow any transfers. And that's another thing that the district court has done here that has made it perhaps a bit more equitable. We're not going to consider race. We're going to consider the reason you're to provide a reason, which the 2017 Act does not do. The State of Arkansas says you can go to whichever district you want, no questions asked. And that's where the districts have a problem with this. We want to make sure that there's a valid educational or compassionate reason and it's not for an impermissible. Prior to 1989, did Arkansas allow inter-district transfers? Not, well it did and it didn't. I don't know that there was, I think there was a law perhaps enacted in 1984, the legal transfer statute came into being. And then of course freedom of choice was used prior to that and that could have been used for inter-district movement. It was, the purpose of it primarily was to allow intra-district movement, the white children who had previously attended the all-white schools to remain at the all-white schools. And I think the theory was that if the black children had the freedom of choice to move to the white schools, they could do that if they wanted to. That was intra-district technically because one district was operating a dual system. But I think for our purposes here, inter-district transfers have been limited in the past and been allowed only when the effect was integrative. One thing I wanted to point out that I think you touched on with Mr. Jacobs was that the state's reliance on Milliken and Jenkins is misplaced. The state treats orders designed to promote or increase movement from one district to another the same as those designed to prevent it. And they're not the same. As we noted, the district court's orders do not mandate consolidation as in Milliken. The orders do not instruct the party districts to attempt to lure inter-district transfers from their neighboring whiter districts as in Jenkins. But they prevent inter-district transfers. Unless you make the request and you have an educational or compassionate reason. I mean, what does that mean, educational or compassionate? I think to use the previous case as an example, if our school could not meet the needs of providing a free and appropriate public education to a child with autism, for example, or ADHD, if they were already enrolled at Harmony Grove and receiving services out there and comfortable in their environment and a student with autism. And then the parents move into Camden Fairview. And the parents say, we would really like not to disrupt our child's education due to his medical diagnosis. I think that would be something our school boards would be sympathetic to. An educational reason, one of the transfers that was granted was actually into Hope School District from South Pike County, which is a whiter district. And Hope operates an academy of public service, which is a different, which is not offered at South Pike County. And so they allowed that transfer. That transfer was segregated. It was a black student from South Pike County coming into Hope. So I think it all depends on the nature of the request. And it is fact specific to the district. But I think that they have allowed these transfers. These school boards have considered them. And I think that the district court's orders are working to achieve. Except for the parents of students who have been denied transfers. Except for the parents of students. Well, first of all, a couple of the parents cited by the state and by the AMICI didn't even bother to make a request. Three of the AMICI have already been admitted to the schools they requested. But it still is not effective for parents who have their transfer request denied. It doesn't, but we think the parents should have some obligation if it is of such critical importance that their children go to a different school, different from the place they've chosen to live and make their home. And they want to send their children out of that district. It shouldn't be too much trouble for them to come before their resident school board and say why. That may be, but why is that mandated by the Constitution or the consent decrees here? Isn't that a policy determination that the legislature has already said, you know, we disagree with that. That may be the better policy. But I'm trying to get why is it mandated? Well, I think it's mandated because there's documented white flight. I mean, when you have 120 some applications and two of them are black, I mean, I get what you're saying if it was just one. I think if it was just one, we wouldn't be here. But every year, there has been an attempt by tens to hundreds of students to leave and they're all white. And we would ask that you affirm the district court's orders. I see my time is running out. Thank you. Are you ready, Mr. King? Thank you, Your Honor. I'll try to be quick. On the subject of the transfers that are able to be granted, I think that's just entirely a red herring. Because under the terms of reason that they wanted to. So they're not required to accept any, the orders do not define what an education or compassionate transfer even is. The districts just sort of have total discretion to decide. The legislature has decided that that should, that that discretion should be given to the parents. And the Constitution doesn't say otherwise. Let me ask a question. To what extent is it relevant that there are vestiges of discrimination? So that is news to the state of Arkansas. That the districts would claim this. The districts have claimed to the state the exact opposite. So if the court looks, I don't have the record sites on hand, but it's at the very back of the appendix. The districts are required to file reports with the state saying, what are you doing to comply with your desegregation obligations? The answer is we have, there are no obligations under our orders in any of these cases other than not to participate in a race neutral school choice transfer. That's what they tell us. In Camden Fairview. But if you, if you've eliminated all vestiges of discrimination, then are you not allowed to achieve unitary status and come, and basically come out from under the court order? Well in Camden Fairview has. Camden Fairview was declared by the district court to be unitary. I understand. And it did. The others are not. The other districts have simply not. And I would suggest it's because the only obligation that they see under the decrees, they're not really required to do anything except not participate in school choice. Why would they go and ask for unitary status when it doesn't do anything except provide what they see as a benefit? So you're in sort of a bad situation with that. On the point that you asked about under freedom of choice plans, if I could indulge the court for just a moment. You may. Freedom of choice is a term of art that was used in these 60s and 70s cases where you had one district operating dual school, dual school systems. You had white schools and black schools. After they were ordered to be integrated, what some of these districts creatively thought that they could do is say, well, we won't call them that anymore. And we'll let you choose where you want to go to school. And the result, predictably, was that the white students still went to their white schools and the black students still went to the black schools. And you didn't have integration. That's not the same thing as school, inter-district school choice in the 21st century. So in the Junction City Order, it doesn't say anything about inter-district transfers being a problem or an issue. It's not clear to me under these freedom of choice plans that inter-district transfers were even allowed back at that time. If I could have one more moment, the only thing I would leave the court with is that as we stated in our stay motion before briefing, the relevant deadline for the 2020 school choice year is July 1st. If we don't have an order from the court in time for the July 1st deadline, another year of school choice will sort of be lost to the children and parents who want it. Thank you very much. We will take the case under advisement. Thank you for your arguments. And we will certainly attempt to meet your July 1st deadline with any opinion we draft. If we don't get it done by then, that would be a sad commentary on where we're at, given that it's December.